Your Honor, it's a good morning. Gary Burcham on behalf of appellant Gary White. This case presents an application of last year's decision written by Judge Kaczynski in U.S. v. Pimentel-Lopez. Could you speak up a little? I'm sorry, Your Honor. Maybe the mic is... This case presents... Press that button. Speaker, the little speaker. This one? This one? Yeah. It says power. This one? I'll do it. Speak up a little bit. No, just speak normally. Okay. This case presents an application... Don't lean forward. Just speak. Just speak. Testing, testing, testing. You're going to get it back if you lean forward. I don't think you need to lean forward. Okay. There you go. There you go. We got you. Thank you. All right. That's fine. Thank you. Great. This case presents an application of the Pimentel-Lopez decision written by Judge Kaczynski last year. As was the case in Pimentel-Lopez, in this case, the government asked the jury for type and quantity findings with both a high and a low boundary. And also, as was the case in Pimentel-Lopez, the jury disagreed with the government's take on the evidence and found only the minimum quantity, which in this case was less than 50 grams of heroin. Despite this finding from the jury that it was specifically asked to give, the district court disagreed with the jury's conclusion and increased Mr. White's sentence substantially based upon its belief that he should be responsible for more drugs than what the jury had found. The government disagrees that Pimentel-Lopez controls this case for a couple reasons. First of all, it says that in this case the district court didn't actually increase the sentence based upon drug type and quantity. It increased the sentence for other reasons. But if you look carefully at the record, that that's really not the case. It is true that the district court was concerned about other things in the case, such as Mr. White's criminal history, Mr. White's leadership role in this gang, Mr. White's statements to the gang. But those issues were all addressed by the district court's advisory guideline calculations. For instance, the criminal history issue, the district court increased its criminal history category from four to six. That's a two-category increase. That's pretty unusual. With respect to the role issue, it was concerned about, it applied the four-level aggravating role enhancement, which is how you deal with a role issue. And then with respect to the statements about protecting territory, it applied a two-level increase for the credible threats of violence. And so what was left when those applications were applied was drug type and drug quantity, and that's what the district court used. That's not all he used, right? That's not all he used. It's not all he used, but I think it was the primary driving force behind that increase from the 110 to 137 all the way up to 168. Well, he's got the poll camera, and he made, I certainly grant you that, many mentions of the defendant's conduct, including an encouraging use of violence to enforce the gang's territory. Correct. Okay. And you're not arguing that that was a foul on the play to use that in a 3553 analysis? Correct, yeah. Okay. But I think what you're arguing, my understanding of your argument is that at bottom, the judge made judicial findings of fact that were contrary to a question put to the jury, and our precedent requires that if the government puts a question to the jury in the special verdict form, they're bound by the answer. Exactly. Does it matter in this case, it differs a little bit from Pimentel, because the judge here didn't change the base offense level. He didn't bake in the quantity and type there. He put it, I think, factored it into the 3553 analysis. Does that change anything? I don't think so. In this case, the government asked the district court to increase the base offense level to 32. The district court declined to do that, but then it increased the sentence based upon 3553A. I don't think it makes a difference. The findings are the findings. An increase in a sentence is an increase in the sentence. And looking at Pimentel-Lopez, nowhere did the court limit its application in that case simply to a base offense level increase. It talked about enhancing a sentence, and whether it's done with a base offense level increase or whether it's done with a 3553A variance upward for the same reason, both are essentially enhancements. So I don't think it makes a difference whether it's an actual formal guideline increase or whether it's done through a variance. If we were to rule in your favor, you think we should hold off until the government's time to petition for cert and Pimentel is up? I think it would make some sense to see if that case remains good law, yes. If the court has no further questions, I'll reserve my time for rebuttal. What's the effect of vacating the conviction on count five? I don't think there's any effect in this case. First of all, the government said there was no effect on remand. The district court never brought the issue up, and so I don't think it was even ever in play when it was remanded to the district court. I talked about double jeopardy in my brief, and I think that would have limited the government's ability to retry count five but then try for higher type and quantity. I think that the government had a full and fair opportunity. In fact, without a Sears instruction, it had more than a full and fair opportunity to submit drug and type to the jury. The jury totally disagreed with the government's take on that, and so that was essentially an insufficiency of evidence finding by the jury, and so if this case went back and the government decided to retry count five, which they certainly could based upon the Sears error, I think it would have been limited in terms of what it could have asked for and received for type and quantity. But to Judge Reinhart's point, it is true, isn't it, that the special verdict finding we're talking about was made in conjunction with count five? It was. Right. And so you have to look back at the indictment, don't you, to find the same language? Yes. Yes. And so it was made count five. Count five was a drug conspiracy count. Count one was a RICO conspiracy count. The proof for the drugs was exactly the same as to both, but it is true that the special verdict was connected to count five. Which they elected not to retry. Exactly. Okay. If there's no further questions, I'll reserve three minutes for a vote. Thank you. May I please escort? I'm Scott Lara, and I'm representing the United States in this matter. So a few things. First, Pimentel-Lopez does not apply in this case, because the defendant was sentenced under 3553A factors, and the drug quantity, specific quantity finding was never actually made by the judge. Instead, it was like a number of factors that all worked together to increase the defendant's sentence. Particularly, the judge relied on defendant's violent criminal history, his recidivism, his leadership of the gang, and the totality of the gang's activities. He could have reached the same result probably without the enhancement of quantity, but we know that he also increased the quantity, right? So that was part of his decision-making process. Well, Your Honor, he considered the fact that this gang sold a significant quantity of drugs. That was the primary purpose of the gang. This defendant was the leader of that gang and provided security for this gang, and as a result, he varied upwards. I wouldn't say that he found a specific quantity that was far higher than 18.9. He actually, I think he just says those words. He doesn't actually say it's an X amount of drugs, and he didn't actually increase the guidelines as a result of that. Nobody said, I would articulate that the 18.9 grams greatly understates the amount of controlled substances the defendant is responsible for. What is clear is that the meeting we saw over and over again referring to the camera, Mr. White should be held responsible for far more than 18.1, which is a little misstatement, grams of heroin. Yes, and then he goes on. I think I counted four places where he really stresses this point, and it goes to quantity. Yes, Your Honor. So he says that Mr. White should be responsible for the criminal activities of the gang, the primary criminal activity being drug sales, and he says, as you mentioned, that he should be responsible for a larger quantity of drugs than what the jury found him for, 18.9 grams, but he doesn't make a specific finding as to specifically how much. Where does he get that? Where does he get what, Your Honor? The idea that there's more, he's responsible for more. The judge actually sat through two trials into this gang in particular, and in Mr. White's trial, and then there was a second trial where there was actually a pull camera, which was admitted into evidence, which showed that there was ongoing drug sales on an almost daily basis, out in the middle of the street, out in the middle of the day. And so what the judge is saying is that I saw the evidence of all these drug sales. I also saw the gang video. In this other stuff, in this other trial. Yes, he saw it in this other trial. Aside from the Pimentel point, can a judge rely on evidence outside the record of this case in enhancing the sentence? Yes, Your Honor, he can. He also considered evidence that was in record in this. What's the authority for saying that you can rely on evidence in a different trial? The trial in which this defendant was not involved? Yes, Your Honor. So first I should say that he mentioned this at the first resentencing hearing in 2012, and the defendant did not object. So the defendant's argument that he shouldn't consider this pull camera video is waived at this point.  The judge may rely on all relevant facts, including those outside of the trial record and jury verdict in exercising discretion at sentencing. And that comes down from Booker and Cunningham v. California. Well, I don't know what that means, all relevant facts. You mean things that he happens to know that were read in the newspaper? No, Your Honor. So things that he learned based on the conduct of this gang from another related gang trial. This was a big RICO conspiracy. Well, but this defendant was not a party to another case. He didn't get a chance to dispute the evidence, didn't get a chance to cross-examine the witnesses. So I'm not exactly sure how the judge can import what he found out in this other case into setting a punishment for this case. I should say, Your Honor, that he didn't solely rely on that. That is something he mentioned at the sentencing hearing, that he saw these pull camera videos. Yes, of course. In this trial, he saw the pull camera videos. He saw it in the second trial, Your Honor. This was the first trial. So at the time, okay, so now I am confused. Because he said the gang established monopoly in the Del Rio housing project and characterized the project as a drug bazaar and drug sales gone wild. Yes. He made those statements in this case, right? Yes, he did. And this is the first or second trial, sorry? This is the first trial. Okay, so he also made at that sentencing. But wait a minute, wait a minute, wait a minute. So as of the time he made these statements, what's he relying on? He's relying on a number of things. He's relying on witness testimony from people that actually lived in. In this trial, counsel? Is it evidence in this trial? Yes. He's relying on witness statements from this trial. He's relying on undercover testimony from this trial. He's relying on things of that nature. But he also mentions at one point that there's also a pull camera video. He invites the appellate court to watch the pull camera video because it shows a lot of drug sales as well. That reflects that there was so much drug activity, it's hard to even begin to assess how you start counting the amount of contraband that Mr. White should be held responsible for. And I took that to mean that he was watching drug transactions ongoing on the pull camera. I mean, I think it says as much pretty clearly in the record. Yes. But I just want to be really sure that's this trial. The pull camera video was not introduced in this trial. Am I wrong that the judge was referring to the pull camera when he made this statement at ER 43? I don't see exactly. And please don't hesitate to correct me if I'm wrong. My notes may be incorrect. That was my understanding. What statement in particular at ER 43, Your Honor? That the video displayed to the court. Right. It reflects that there was so much drug activity, that statement. That is referring to the pull camera, Your Honor. Which was not in evidence in this trial. Which was not in evidence in this trial. Correct, Your Honor. Okay. Thank you for your candor. Now, I will also say that the. . . What's the limit on a judge's consideration of. . . I mean, if he gets an anonymous letter. . . So, Your Honor, he has to. . . He can say, I got this anonymous letter. I believe it. You know, telling me that this defendant is actually engaged in many more drug transactions. And, you know, it says 4 kilograms. So, can he rely on that? Your Honor, he has to have a minimum indicia of reliability to consider it at sentencing. And then, after that, a judge can rely on facts that are outside of the trial record that's presented to the jury. Without giving defendant. . . Well, the defendant had the opportunity. . . Was it. . . I'm sorry? Excuse me, Your Honor. Go ahead. Let me just go back. Was any of this evidence included in the PSR? I don't think that the pull camera itself was included in the PSR mentioned to it. But that was given to the probation office. But generally, that's how facts come in at sentencing. That's my understanding. That's my experience. You don't usually take evidence at sentencing. Usually, you rely on the trial, evidence presented at trial, plus there was additional evidence presented to the probation office. And then the probation office makes proposed findings as to various things, including drug quantity. And then, as I understand, either side can object. Yes. And if a side objects, the district judge can say, I will not consider this part of the PSR or take an eventual hearing and say, we'll give you a chance to dispute it. That's how it works. But I was not aware that judges can just say, well, I'm aware of this. I know this other stuff for this other case. What chance did the defendant have to dispute the camera evidence? Well, Your Honor, they had a couple of chances. First, Your Honor, this was actually given over to defense in discovery as well. Secondly, this was given over to defense. Well, there's lots of stuff given that the court doesn't consider because nobody introduces it. Right. So just being given in discovery doesn't help at all. Yes. I mean, you mention it, but it's not at all helpful to you. He's given it at discovery, and then it was mentioned by the judge at sentencing when the judge was recounting the reasons for his upward departure. Isn't that too late at that point? No, Your Honor. At this point, defense has the opportunity to stand up and object and say, Your Honor, that wasn't in the record in this trial. And then the judge would either make a finding as to whether or not he's allowed to consider that. Here, defense didn't do that. He waived it. This case actually went up to this circuit. But he did object. He said, can't consider any evidence other than what's found by the jury. Your Honor, he said. I thought that was an objection. He didn't object. He said that he asked the judge to find that way. He didn't actually phrase it as an objection. He didn't phrase it as a procedural error issue with the judge. He said, you are not allowed to consider this. He didn't say Simon says? Mother, may I? Yes, Your Honor. What do you mean he asked the judge to? What do you mean? So his response was to say? Well, Your Honor, I believe at a different point when the judge was considering an increased drug quantity, defense counsel stood up and said. Oh, that part I understand. Yes. I thought you were speaking now. You're not speaking about the poll camera, the other evidence? No, that's correct, Your Honor. Okay. Was there an objection to that? No, Your Honor. Okay. Additionally, this case actually already went up to the Ninth Circuit, and the Ninth Circuit made a number of findings as well about the drug quantity or the amount of drug activity going on in this case. They said it was pretty clear. When they were considering the sufficiency of the evidence, the Court said it was pretty clear that there is a significant amount of drug activity going on, that there is sufficient evidence to prove that Mr. White is a leader of the gang and that he has a violent criminal history. Additionally, Your Honors, I would also like to say that the judge specifically so defense counsel mentioned briefly that stuff like his gang violence was essentially used up when the Court decided to change the guidelines in order to reflect the fact that the defendant has a more violent criminal history than the PSR allowed for him. But the Court also specifically said at sentencing that when analyzing his 3553A factors, his history and characteristics are, I think, the most serious. So what the judge is saying there, that he's considering it not only with the guidelines calculation. He's also considering it as part of his reasons for varying upwards. And so some of those factors, some of the things that Mr. White had been convicted of, and I actually see I'm out of time. So unless Your Honors have any further questions, I'll sit down. Thank you, Kat. Thank you. Counsel, could I just ask one question before you even launch? Yes. Just in route to the podium. Thanks. My understanding is the evidence on the poll camera wasn't of your client. It's sort of other drug activity in that neighborhood. Is that right? It's a shot of just buildings and people. In the housing project. Exactly. Okay. Yes. On remand, the district court could not have been more clear that it increased the sentence because of the drugs. On ER-6, it said that the government had argued that there were much higher quantities, and the district court said it made adjustments because of that. And I think that's crystal clear evidence that, yes, there were other things the district court was concerned about with Mr. White, but one of the primary reasons, or a primary reason, it increased the sentence was because of this belief that he should be responsible for more drugs. That's contrary to Pimentel-Lopez. But at that time, Pimentel-Lopez had not been decided. That's correct. So was there an objection based on the fact that the judge relied on evidence and not in this record? Your Honor, I just noted the objection that was made that the counsel said that the court should limit itself to what the jury had found. It wasn't done in the context of Pimentel-Lopez because of... Opposing counsel says that's a request. It wasn't an objection. Well, it was an argument made at sentencing. It was made twice at sentencing. So, you know, he didn't have a crystal ball. He didn't know Pimentel-Lopez was coming. But he essentially made the same argument. But what happened in Pimentel-Lopez is the quantity was actually presented to the jury and the jury chose to find the lesser amount, could have found more. Right. I take it in this case there was no evidence presented to the jury that would have justified more than 18.1 grams, or was there? Well, the government certainly thought there was and the district court thought there was. But the jury... Presented to the jury? Yes, yes. The government, the special findings in count one, which... It's a weird verdict form. Have you looked at the verdict form? Yes, I have. The next tier up is at least 100 grams but less than 50 grams. Right. Which is sort of an impossibility. It was like a ladder and it didn't make a lot of sense. But they submitted it, they asked for it, they got it. And as Pimentel-Lopez says, if they ask for it and they get it, they're stuck with it. What's wrong with a judge at sentencing to say, I've done a lot of these trials, I am familiar with this neighborhood, I know this, it's well known that this housing project is a wash in drugs and they're, I mean, what's wrong with that? I think we need to limit or the judge needs to limit his consideration to the evidence in this case. I think, you know, general knowledge about things. But we don't do that. I mean, there's certainly other cases I can think of where a judge says, you know, that stop, that frisk, you know, it happened, it was dark, I know that area, it's remote, it's well known. If there isn't an objection and it's sort of a fact about a local area like that, I'm not so sure. I think it's sort of a slippery slope, I'll grant you that. But depending on how specific it is, I'm not sure that it is a problem. Your client wasn't pictured on the poll camera. So to the extent we're talking about a judicial finding that contradicts a special verdict form, that's one thing. But to the extent the judge on remand were to talk about your client's leadership role in an area where that is, he said, a drug bazaar and your client's, as I said, I think there was evidence that he was encouraging the use of arms to control the territory and whatnot. Isn't that fair game in a 3-5-5-3? Well, as to the latter point Your Honor made, I mean, that was in a video that actually showed the guys talking. So that's fair game. You've said that that's fair game. I think so. Sure. Yeah, I do. But the quantity based on this finding is not. And so that's where that's the problem. But I think you're making two arguments. You're way over time. But I think you're making both arguments. Both the very specific one, which is that the judge made a judicial finding, a fact that contradicts the special verdict form. And I think you're also arguing that to the extent in the 3-5-5-3 analysis he relied on that poll camera to say your client is responsible for being a leader in an operation that is responsible for distributing a whole lot of drugs, that that was also improper because that evidence wasn't submitted here. Yes, Your Honor. Okay. May I ask you just one question out of curiosity? There's one count that's not affected, 16 or 18. Will that count remain at that length, which is the same as these, or will they all be considered together? If the court gives relief on this quantity type, I think it will affect all accounts. Thank you.  Case discharge will be submitted. Thank you both very much.
judges: Reinhardt, Kozinski, Christen